UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAURA LEE HAWKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:13-CV-0053-CAN |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

On January 28, 2013, Plaintiff, Laura L. Hawkins ("Hawkins"), filed her complaint with this Court seeking judicial review of the decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). On June 21, 2013, Hawkins filed her opening brief. On September 27, 2013, the Commissioner filed a memorandum in support of the Commissioner's decision. On October 3, 2013, Hawkins filed a reply brief. This Court may enter a ruling on this matter based on parties' consent, 28 U.S.C § 636(c), and 42 U.S.C. §§ 405(g). For the reasons stated below, the Court affirms the Commissioner's decision denying SSI benefits to Hawkins.

**I.   RELEVANT BACKGROUND**

    **A.   Procedural Background**

On May 26, 2010, Hawkins filed an application SSI, alleging disability beginning on February 20, 2008. The claim was denied initially on July 30, 2010, and upon reconsideration on October 27, 2010. On timely request, a hearing was held before an administrative law judge ("ALJ") on September 21, 2011. On October 4, 2011, the ALJ drafted a written decision

denying Hawkins' claim for relief. The ALJ held that Hawkins was not disabled under Section 1614 (a)(3)(A) of the Social Security Act. In reaching that conclusion, the ALJ found that Hawkins had not engaged in substantial gainful activity since May 26, 2010—the date of her SSI application—and that her degenerative lumbar disc disease, asthma, obesity, arthritis, and headaches constituted severe impairments pursuant to 20 C.F.R. § 416.920(c). However, the ALJ also found that Hawkins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically found that Hawkins retained the capacity to perform light work as defined in 20 C.F.R. §§ 416.960(c), 416.962. Moreover, the ALJ determined that Hawkins' had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk 6 hours each day in an 8-hour workday. In addition, the ALJ found that Hawkins could not climb ladders, ropes, or scaffolds; could only, on occasion, climb ramps, stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to cold and heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, hazards, machinery, and heights. In sum, the ALJ determined that given Hawkins' age, education, work experience, and residual functional capacity ("RFC"), there are employment opportunities in the national economy that she can perform.

On December 10, 2012, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981. Hawkins filed a complaint in this Court seeking review of the Commissioner's decision on January 28, 2013.

B. Facts

Hawkins was born on April 15, 1960, and was forty-eight year old female at the alleged onset date of disability and fifty-one years old as of the date of the hearing. Hawkins has an eighth grade education and performed past work as a laborer and housekeeper.

1. Claimant's Hearing Testimony

At the hearing, Hawkins testified that she suffered from lower back pain, knee pain, and fibromyalgia, which prevented her from working and sustaining employment. Further, Hawkins testified that she was prone to severe headaches, occurring as frequently as two to three times a week and lasting as long as a couple hours. She explained that in the midst of these headaches, she has to take medication, such as Frova to treat her migraine symptoms, lie down, and relax. The headaches are brought on by stress, exposure to bright lights, and loud noises. She testified that the headaches caused her pain, which frequently reached a six on a ten-point scale.

Hawkins also testified that she injured her back roughly six years prior to the hearing date. Further, she indicated that she suffers from fibromyalgia[1] with pain occurring in her neck and throughout her entire body. She testified that she has difficulty lifting, carrying, sitting, standing, walking, and with the majority of routine, daily activities. She claims that her back and neck pain reaches a level eight out of ten. Additionally, she maintains that she can only carry out certain daily activities, including watching television, washing dishes, and doing laundry. In regard to mobility, she contends that she is only able to bend on her knees for a short period of time and can only squat while holding on to something. She claims she is only able to walk at a slow pace and needs to use chair arms to maintain her balance.

---

[1] Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown. *See Stedman's Medical Dictionary* 725 (28th ed. 2006).

## 2. Medical Evidence Regarding Headaches and Migraines

Dr. Walter Miller, M.D., appeared as an impartial medical expert at the hearing and testified that because of the frequency of Hawkins headaches it would be difficult to pinpoint the cause. In October 2009, Hawkins reported blurry vision and headaches and received a new prescription for glasses. Dr. Euvman, Hawkins' ophthalmologist, opined that Hawkins' vision problems were a key contributor to her headaches. In February 2010, Hawkins complained that the reported headaches had created episodes of phonophobia, photophobia, and nausea. Hawkins stated, by way of a medical questionnaire, that her headaches were caused by stress. However, by May 2010, Hawkins reported that her migraines had stopped, that she very seldom got headaches, and that she no longer needed medication. In June 2011, Hawkins reported to her primary physician, Dr. Michelle Pearson, M.D., that her migraines were "finally under control."

## 3. Medical Evidence Regarding Pain and Fibromyalgia

Shortly after Hawkins filed for disability, her attending physician, Dr. Michelle Pearson, referred her to Dr. Stephen Ribaudo, M.D., a board-certified rehabilitation specialist, for treatment related to her back and neck pain. Dr. Ribaudo ordered an MRI that showed moderate facet arthritis with bilateral joint effusions at L2-4 through L4-5 and mild lumbar spondylosis[2] and mild disc bulging. Further, diagnostic studies showed only mild abnormalities for which Hawkins sought only conservative treatment. Hawkins then pursued treatment with Dr. Daniel Cooke for her lower back pain. Dr. Cooke recommended a lumbar facet injection for treatment as well as physical therapy. Hawkins refused the injection, but did attend physical therapy. The

---

[2] Lumbar spondylosis is a condition where the diagnosed develops, "bony overgrowths (osteophytes), predominantly those at the anterior, lateral, and, less commonly, posterior aspects of the superior and inferior margins of vertebral centra (bodies). This dynamic process increases with age, and is perhaps an inevitable concomitant, of age." *See Lumbar Spondylosis*, MEDSCAPE (Jan. 23, 2013), http://emedicine.medscape.com/article/249036-overview

physical therapy improved Hawkins' back pain considerably and by January 2010, she reported that she was pain free for one week. In November 2011, Hawkins informed Dr. Pearson that her low back pain was under control as long as she did not over-exert herself with housework or walking. Further, Dr. Miller, the medical expert who testified Hawkins' ALJ hearing, agreed with Dr. Pearson's analysis finding Hawkins' lumbar disc disease and arthritis severe but manageable with therapy.

Regarding Hawkins' bilateral knee pain and mobility, the consultative examination indicated that Hawkins' range of motion was normal for her age and weight and that she had normal gait. Further, the examination revealed that Hawkins was able to get on and off the examination table without assistance. Lastly, Hawkins was diagnosed with fibromyalgia in June 2011, just three months before her hearing before the ALJ. Considering Hawkins' fibromyalgia diagnosis, Dr. Miller testified that it was "peculiar" to see a diagnosis of fibromyalgia "without any other evaluation" for other conditions alternative to the fibromyalgia diagnosis.

## II. ANALYSIS

### A. Standard of Review

Judicial review of disability decisions of the Commissioner of Social Security is limited in scope and the Court shall affirm the ALJ's decision if it is supported by substantial evidence and is free of legal error. *See* 42 U.S.C. § 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). A reviewing court shall not re-weigh the evidence set forth in the record; however, the ALJ must form a logical nexus from the evidence to his final determination. *Hayes*,

416 F.3d at 626. With that said, the ALJ need not provide the court with an assessment for every piece of evidence in the record. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2003).

The claimant must establish that she is disabled pursuant to 42 U.S.C. § 1381a, in order to recover disability insurance or supplemental security income. 42 U.S.C. § 423(a)(1)(D). The Social Security Act describes disability as the "inability to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has developed a five-step sequential evaluation pursuant to 20 CFR § 416.920(a) to determine whether a claimant is disabled or not. The evaluation includes whether: (1) the claimant is engaging in substantial gainful activity; (2) the medically determinable impairment is severe or a combination of impairments that is severe; (3) the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) the claimant has the residual functional capacity to perform the requirements of her past relevant work; (5) the claimant is able to do any other work considering her residual functional capacity, age, education, and work experiences. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ may make a determination that the claimant is or is not disabled at any time during the sequential evaluation without having to address any remaining steps. 20 C.F.R. §416.920(a)(4). A determination by the ALJ, in the affirmative, under either step three or five establishes a finding of disability. *Briscoe*, 425 F.3d at 352. If the claimant's impairment falls within any of the listed impairments, under step three, the Commissioner will find the claimant to be disabled. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment is not listed, the ALJ evaluates

the claimant's RFC to determine whether the claimant can continue past work or other work in society. 20 C.F.R. § 416.920(e). The claimant bears the burden for of proof for step one through four; however, the burden then shifts to the Commissioner at step five. *Young*, 362 F.3d at 1000.

### D. Issues for Review

Hawkins challenges the ALJ's RFC determination. Hawkins raises essentially two arguments to demonstrate that the ALJ's RFC determination is not supported by substantial evidence such that remand is appropriate in this case.[3] First, Hawkins contends that the ALJ failed to account for all the relevant evidence in the record in assessing Hawkins' RFC. Second, Hawkins maintains that the ALJ improperly analyzed Hawkins' credibility in his RFC determination.

The RFC of a claimant establishes her ability to do day-to-day physical and mental activities in spite of her functional limitations caused by stated impairments. 20 C.F.R. § 416.945; SSR 96-8p (1996). The ALJ must consider all of the relevant evidence in the record to adequately access a claimant's RFC. 20 C.F.R. § 416.945. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96–7p (1996). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96–8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R.§

---

[3] The Court has reorganized the three issues that Hawkins raised in her opening brief into two issues because two of Hawkins' issues address the same standard of whether the ALJ considered all the relevant evidence in making the RFC determination.

416.946. Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work-related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96–8p.

### 1. The ALJ considered all of the relevant evidence in the record when assessing Hawkins' RFC.

Hawkins seeks a reversal, or alternatively a remand, for consideration of all relevant evidence in the RFC. Hawkins first argues that the ALJ prematurely dismissed the limitations she faces due to her fibromyalgia[4] and headaches in performing daily activities and engaging in work. Further, Hawkins maintains that the ALJ failed to consider certain, older medical records that would have supported a more restrictive RFC.

"[T]he final responsibility for deciding residual functional capacity (ability to work—and so whether the applicant is disabled) is reserved to the Commissioner . . . and [the court] will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R.§ 416.927(d)(2). An ALJ may adopt the findings of a medical professional as he sees fit, but is "not bound by any findings (of disability) made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 416.927(e)(1)(i). Further, a RFC assessment is a "function-by-function assessment," however the ALJ need not articulate the RFC function-by-function. *Knox v. Astrue*, 327 F. App'x 652, 656

---
[4] Hawkins also contends in a footnote that the ALJ's finding that her fibromyalgia was not a severe impairment at Step Two was flawed. Doc. No. 21 at 8 n.7. The ALJ labelled Hawkins' fibromyalgia as non-severe because she had been diagnosed with it less than 12 months before the hearing. Hawkins disagrees with the ALJ's interpretation of the durational requirement analysis. *See* 20 C.F.R. § 416.909 ("unless an impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months"). However, Hawkins concedes that the severity determination need not be addressed here because Hawkins' fibromyalgia would necessarily be considered in the RFC determination. Even so, Hawkins challenges the severity finding insofar as it would support a more restrictive RFC determination.

8

(7th Cir. 2009). It is sufficient for an ALJ to provide "a narrative discussion of a claimant's symptoms and medical source." *Id.*

### a. Headaches and Fibromyalgia

The ALJ provided a narrative discussion of Hawkins' medical history and developed the record in his ultimate RFC finding. First, the ALJ accounted for Hawkins' headaches in his credibility determination and cited to Hawkins' medical records concerning this impairment. In reviewing these records, the ALJ found that Hawkins had not experienced episodes of severe discomfort since June 2011. The ALJ referenced Hawkins' May 2010 medical records—post-prescription of Frova—that indicated Hawkins had been pain-free since using Frova. Additionally, the ALJ noted that the Frova had successfully treated Hawkins' photophobia, phonophobia, and nausea without any signs of recidivism to date. The ALJ determined that, based on the medical records and Hawkins' own admission that her migraines were "finally under control," a more restrictive RFC was not implicated.

Second, the ALJ accounted for the fibromyalgia within the RFC assessment. The ALJ included mobility limitations related to lifting, carrying, pushing, pulling, walking, standing, sitting, performing postural activities, and working under hazardous conditions in Hawkins' RFC, which directly reflected the opinion of medical expert, Dr. Miller. The ALJ relied upon Dr. Miller's statement that the mobility limitations accounted for Hawkins' symptoms from fibromyalgia because fibromyalgia causes mobility issues as the result of the muscle tissue tenderness consistent with the disease. Despite the ALJ's attention to her fibromyalgia-based mobility issues, Hawkins contends that she has even greater difficulties with lifting, carrying, sitting, standing, and performing daily activities than the mobility restrictions accommodate. However, the ALJ cited evidence that does not support this contention. In particular, the ALJ

referenced and adopted consultative examiner Dr. Peter Sices' determination that Hawkins had no impairments related to gait, coordination, hearing, speech, memory, concentration, attention span, and dexterity. Further, the ALJ cited to Hawkins' 2010 medical visit with back specialist, Dr. Daniel Cooke, regarding her lower back pain. The ALJ found, by reference to Dr. Cooke's analysis that Hawkins' lower-back pain significantly improved with physical therapy. Lastly, the ALJ cited to medical records from Hawkins' November 2011 visit to Dr. Pearson that revealed minimal, if any, back pain.

Moreover, Hawkins failed to provide any further evidence of her fibromyalgia beyond the initial diagnosis, and did not identify any limitations beyond those accounted for in the RFC. The ALJ is limited to the record and the evidence that lies within. The ALJ considered such evidence, including reports, treatment notes, and assessments from treating, examining, and reviewing medical sources. The ALJ's review indicated that no other medical physician or source found that Hawkins was more impaired by her fibromyalgia or headaches than reflected in the RFC. Thus, after accounting for all Hawkins' impairments—severe and non-severe, including headaches and fibromyalgia—and the opinions of medical expert Dr. Miller and consultative examiner Dr. Brill, the ALJ supported Hawkins' RFC determination with substantial evidence.

### b. Medical evidence before SSI application date

As part of the record in this case, Hawkins included her medical and treatment records dating back to 1993. *See* Tr. 232–95; 340–461 (Exhibits 1F–13F). In his opinion, the ALJ stated that the records filed as Exhibits 1F, 2F, 3F, 4F, 5F, and 13F were not relevant because these particular documents reported medical treatment prior to Hawkins' SSI application date in

May 2010. Hawkins challenges the ALJ's disregard for her older medical records claiming that they support a more restrictive RFC.

Medical evidence is relevant to a disability claim only insofar as the evidence pertains to the claimant's current condition. *Browning v. Astrue*, No. 2:06-cv-436, 2008 WL 835702, at *7 (N.D. Ind. 2008). Thus, the *relevant* time period for an ALJ to consider evidence commences at the beginning of the month in which claimant filed for SSI disability benefits. *Id.* In addition, an ALJ need not discuss every fact. *Id.* "[F]ailure to address specific findings . . . does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Furthermore, a conceivably different outcome is not the basis for disturbing the ALJ's determination. *Elder*, 529 F.3d at 413. The ALJ need only demonstrate "adequate consideration of all evidence . . . [as defined by] careful consideration to the entire record and all symptoms stated within." *Richison v. Astrue*, 426 F. App'x 622, 626 (7th Cir. 2012).

Therefore, the key here is what records and relevant evidence the ALJ did consider in determining Hawkins' RFC. The ALJ specifically cited to Hawkins' 2009, 2010, and 2011 medical records and addressed all stated impairments, including Hawkins headaches and pain symptoms. In regard to Hawkins' headaches, the ALJ reviewed Hawkins' medical records, dating back to 2009—one year before Hawkins' SSI application date—which revealed that Hawkins' headaches have been effectively treated since June 2011. Regarding the pain symptoms, the ALJ noted that Hawkins' 2010 consultative examination revealed normal gait and little to no deformity of the spine. The ALJ also considered Hawkins' January 2010 visit to back specialist Dr. Cooke, during which Hawkins reported to be "pain-free." Additionally, the ALJ

11

accounted for the November 2011 records that indicate Hawkins' back pain has been effectively treated and Hawkins is only in pain when she physically over-exerts herself.

Furthermore, the ALJ addressed Hawkins' older medical records. The ALJ also noted that Hawkins failed to explain exactly how these older records support a different RFC. Nevertheless, the ALJ reviewed Hawkins' overall medical history, including the older records, in his credibility analysis. Thus, the ALJ properly accounted for all relevant evidence as required in making an RFC determination and accordingly supported the RFC determination with substantial evidence.

### 2. The ALJ's credibility determination is not patently wrong and is supported by substantial evidence.

An ALJ will incorporate a credibility analysis of a claimant in determining the RFC when alleged symptoms lack objective medical evidence. *Golembiewski*, 322 F.3d at 915. The ALJ must follow a two-step process in assessing a claimant's credibility for asserting pain symptoms. SSR 96–7p. First, the ALJ must determine whether "there is a medically determinable impairment that can be shown by acceptable medical evidence" and "can be reasonably expected to produce the claimant's pain or other symptoms." *Id.* Second, once an underlying physical or mental impairment is established and the impairment could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate "the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work." *Id.* In evaluating a claimant's symptoms, the ALJ considers factors cited in the Social Security regulations, including the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken or have taken to

alleviate pain or other symptoms; treatment, other than medication, received or have received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3)(iv)–(vi). Should a claimant's statements about her symptoms and impairments lack validation by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire record. SSR 96–7p.

An ALJ's credibility determination cannot purely state that a claimant's allegations of impairment are not credible nor merely recite the regulatory factors without support from the record. *Golembiewski*, 322 F.3d at 915; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must articulate specific reasons for his credibility finding. *Golembiewski*, 322 F.3d at 915; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002); *see also* SSR 96-7p. Nonetheless, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir.2004) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995)). Consequently, a reviewing court must only determine whether the ALJ's credibility findings were "reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

An ALJ's credibility determination meets the minimum articulation standard and must stand when the reviewing court "can track the ALJ's reasoning and be assured that the ALJ considered the important evidence . . . ." *Diaz v. Charter*, 55 F.3d 300, 308 (7th Cir. 1995); *see also Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Further, a reviewing court may uphold an ALJ's assessment of symptoms, "where the ALJ relied on only a few of the [regulatory] factors listed." *Richardson v. Astrue*, No. 1:11-CV-1002, 2012 WL 4467566, at 10 (S.D. Ind. 2012). Therefore, an ALJ's credibility determination of a claimant will only be

overturned if patently wrong. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

In this case, Hawkins maintains that her pain symptoms are ongoing and that they adversely impact her ability to work. As a result, Hawkins challenges the ALJ's determination that Hawkins' statements regarding the intensity, persistence, and limiting effects of her symptoms, including her ongoing pain from her migraines and fibromyalgia, were not credible. The ALJ reached his credibility determination after comparing Hawkins' testimony about her symptoms to the objective medical evidence before him.

First, the ALJ found that Hawkins' statements about the limitations imposed by her migraines were not supported by the record, and therefore not credible. In support of this conclusion, the ALJ cited to Hawkins' October 2009 initial report of blurry vision and headaches, for which her treating physician corrected her prescription for glasses. The ALJ also noted Dr. Pearson's successful treatment of Hawkins' photophobia, phonophobia, and nausea with a prescription for Frova as of May 2010. Further, the ALJ referred to Hawkins' statements to Dr. Pearson in April and June 2011 admitting that her migraines were "under control."

Second, the ALJ found that Hawkins' statements about the limitations imposed by her fibromyalgia were not supported by the record, therefore were not credible. Hawkins testified that she has difficulty performing daily activities. Yet, the ALJ cited to diagnostic studies dating back to 2005 that revealed only mild abnormalities of Hawkins' lower back and neck, all of which were only conservatively treated by Hawkins. In particular, the ALJ noted that Hawkins' July 2010 physical examination indicated generally normal results and Hawkins' November 2011 records revealed an end to Hawkins' back pain, unless triggered by over-exertion.

Furthermore, the ALJ determined that Hawkins retained the ability to lift and carry 20 pounds occasionally and 10 pounds frequently and to sit, stand, and walk 6 hours each day in an 8-hour workday. Therefore, because Hawkins' assertion that she experiences difficulty standing, sitting, and performing daily activities were inconsistent with the medical record, the ALJ determined that her statements were not credible enough to change the RFC determination. Moreover, the ALJ found that Hawkins' very recent fibromyalgia diagnosis rendered Hawkins' statements about intensity and duration less credible. *See* 20 C.F.R. § 416.929(c)(3)(ii).

As shown above, the ALJ appropriately compared objective medical evidence to Hawkins' statements about the intensity, persistence, and limiting effects of her impairments. In so doing, the ALJ articulated the reasons for his credibility determination and demonstrated that his credibility determination was reasoned and supported by the evidence. Accordingly, the ALJ's credibility determination is not patently wrong.

### III.   CONCLUSION

For the reasons stated above, the Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ considered all the relevant evidence in reaching the RFC determination and also made a credibility determination in assessing Hawkins' subjective symptoms that was not patently wrong. Therefore, the Court **AFFIRMS** the Commissioner's decision denying SSI benefits to Hawkins. The Clerk is **INSTRUCTED** to enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated May 1, 2014.

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
